FILED
2010 JAN 21 AM 8:
CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| **BRET A. BROADDUS,** | ) |
| | ) |
| **Plaintiff / Counter-Defendant,** | ) |
| | ) |
| **v.** | ) **Case No.** 5:10-MC-2-OC-10GRJ |
| | ) **Re: Subpoena in a Civil Case** |
| **KEVIN SHIELDS,** | ) |
| | ) **Related Case No. 08-C-04420** |
| **Defendant / Counter-Plaintiff.** | ) **United States District Court for the** |
| | ) **Northern District of Illinois, Eastern** |
| | ) **Division** |

**DEFENDANT/COUNTER PLAINTIFF KEVIN SHIELDS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND SUPPORTING MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff Kevin Shields ("Shields") files this motion to hold LuAnn Pribble ("Ms. Pribble"), a non-party in the above-related case pending in the Northern District of Illinois, Eastern Division, in contempt and to compel her deposition and the production of documents, and requests an order pursuant to Federal Rules of Civil Procedure 26, 34(c), 45(d)(1), 45(e), and all other applicable rules, compelling Ms. Pribble's compliance with subpoenas served on Ms. Pribble on September 18, 2009. As detailed below, counsel for Shields' certifies that, pursuant to Local Rule 3.01(g), Shields' counsel has conferred with Broaddus' counsel, and Broaddus' counsel has no objection to this motion. In support of its motion, Shields offers the following memorandum of law.



C-8143 $39.00

# MEMORANDUM OF LAW

## I. Background

### A. The Illinois Action

Plaintiff/Counter-Defendant Bret A. Broaddus ("Broaddus") filed his Complaint against Shields on May 30, 2008 in the Circuit Court of Cook County, Illinois (the "Illinois Action"). The Illinois Action was removed to the United States District Court for the Northern District of Illinois, Eastern Division, on August 7, 2008.

The Complaint arises from the acquisition of property and construction of a build-to-suit warehouse in Monee, Illinois by Will Partners, LLC ("Will Partners"). (*See* Complaint, attached hereto as **Exhibit 1**.) Broaddus had a minority membership interest (10%) and membership participation in Will Partners. (Ex. 1, ¶ 3.) Shields had a majority membership interest (66.5%). (Doc. 46, at p. 2.) Broaddus alleges that Shields breached an alleged fiduciary duty to Broaddus by making alleged misrepresentations about Will Partners' assets and liabilities in order to induce Broaddus to sell his interest in Will Partners for an allegedly reduced purchase price in 2003. (Ex. 1 at ¶¶ 9-11.) Broaddus claims that he suffered "cognitive, neurological deficits" as a result of a motor vehicle collision in 2001 that left him in a "weakened condition" at the time of the 2003 transaction with Shields. (Ex. 1, ¶¶ 5, 11.) He claims further that Shields "exert[ed] undue influence on Broaddus and [took] advantage of Broaddus when he was in a weakened condition" when Shields purchased the interest from Broaddus. (Ex. 1, ¶ 11.)

Shields filed Counter-Claims against Broaddus in the Illinois Action, alleging that Broaddus breached certain express, unambiguous and written representations and warranties made in the Assignments executed in connection with the sale of the alleged interest. (Doc. 7,

Counter-Claims.) Shields seeks relief from Broaddus in the form of attorneys' fees and litigation costs and expenses. (Doc. 7, Counter-Claims, Counts I-III.)

### B. Subpoena Served On Non-Party LuAnn Pribble

Ms. Pribble is Broaddus' estranged wife. Broaddus identified Ms. Pribble as a witness in his Rule 26(a) disclosures in the Illinois Action but provided no contact information. Broaddus described Ms. Pribble as one with "knowledge of Broaddus' involvement with Will Partners and related business ventures, the sale of Broaddus' interests to Shields, and Broaddus' physical and mental state prior to, during, and subsequent to the sale of the interests in Will Partners." (Doc. 22, Broaddus' Rule 26(a)(1) Initial Disclosures, attached hereto as **Exhibit 2,** ¶ I(C).)

Shields' counsel located Ms. Pribble through independent investigation and had her personally served with a subpoena to testify at a deposition, and a subpoena to produce documents (collectively, the "Subpoenas") in Leesburg, Florida, on September 18, 2009. (See the document subpoena and the deposition subpoena, attached hereto as **Exhibits 3 and 4.**) The Subpoenas were issued, pursuant to Federal Rule of Civil Procedure 45(a)(2)(B), from the Middle District of Florida, where Ms. Pribble's attendance was required for her deposition. (Ex. 3.) The Subpoenas requested Ms. Pribble's deposition, as well as documents relevant to Illinois Action.[1] (Ex. 3.)

Despite having been personally served with the Subpoenas on September 18, 2009, and several follow-up confirming telephone conversations between Ms. Pribble and Shields' counsel (see Affidavit of Megan M. Keleher, attached as **Exhibit 5,** ¶ 5), Ms. Pribble did not appear for

[1] The documents requested are set forth in a rider attached to the document subpoena. (See Ex. 3, at 4-10).

the deposition on October 19, 2009, nor did she produce documents pursuant to the Subpoenas. (Ex. 5, ¶ 6.)

Shields' counsel learned that the trial of Ms. Pribble and Broaddus' divorce proceedings in Cook County was scheduled for November 17, 2009. (Ex. 5, ¶ 7.) After several unsuccessful attempts to reach Ms. Pribble, Shields' counsel finally spoke with her over the telephone on November 10, 2009, and they agreed to schedule her deposition for November 19, 2009 in Chicago. (Ex. 5, ¶ 8.) However, Ms. Pribble did not appear for her deposition in Chicago and did not notify Shields' counsel beforehand. (Ex. 5, ¶ 8.) Shield's counsel later learned that the divorce trial was subsequently postponed and Ms. Pribble did not travel to Cook County. (Ex. 5, ¶ 8.) Shields' counsel attempted to reach Ms. Pribble by telephone several times in late November of 2009, but Ms. Pribble has not returned any of my telephone calls. (Ex. 5, ¶ 9.)

## II. Analysis

District courts are entitled to broad discretion and authority in controlling and managing pretrial discovery matters to ensure that cases move to a reasonably timely and orderly conclusion. *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091, 2008 WL 4753358, at *2 (S.D. Fla. Oct. 29, 2008) (citing *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993); *Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 (11th Cir. 2002)). The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." *Ward v. Estaleiro Itajai S/A*, 541 F.Supp.2d 1344, (S.D. Fla. 2008) (citing *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003)). The federal rules provide for the taking of discovery, including by oral

depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of **any** party" and that "[r]elevant information need not be admissible." Rule 26(b)(1) (emphasis added). "Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests." *In re Subpoena*, 350 F.3d at 69 (citing Fed. R. Civ. P. 30(a)(1) ("A party may take the testimony of any person . . . by deposition upon oral examination without leave of court.")).

A Rule 45 subpoena may be used as a discovery vehicle with non-parties to obtain documents relevant to a pending lawsuit. Fed. R. Civ. P. 34(c). Rule 45 must be read in conjunction with Federal Rule of Civil Procedure 26, because the latter rule "clearly defines the scope of discovery for all discovery devices." 9A Wright & Miller, Federal Practice and Procedure: Civil 3d § 2452 (3d ed. 2008). Thus, a party "may use a Rule 45 subpoena to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Madeline L.L.C. v. Street*, No. 09-80705, 2009 WL 1563526, at *1, (S.D. Fla. June 3, 2009.); Fed. R. Civ. P. 26(b)(1).

**A. Ms. Pribble's Testimony Is Relevant to the Illinois Action.**

Under the "liberal standard" as set forth in Rule 26, relevancy for purposes of discovery is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Gower v. JPMorgan Chase Bank*, No. 8:07-cv-568, 2007 WL 3202463, at *1-2 (M.D. Fla. Oct. 29, 2007). (citation omitted).

Here, there can be no dispute that Ms. Pribble's testimony bears on issues in this case. Broaddus admits that in his Rule 26(a) disclosures. Ms. Pribble was living with Broaddus



70054 v_01 \ 999999.9999

before, during and after the time Broaddus executed the Assignments and became his wife in 2003. She is likely to have factual information probative of Broaddus' ability to conduct business and make decisions during and around the operative time period, including without limitation Broaddus' business dealings, banking activities and day-to-day life at the time of the Assignments, which are at the heart of the Illinois Action as Broaddus has pled it.

**B. Ms. Pribble Has Waived Any Potential Objections To the Subpoena.**

A non-party served with a subpoena requesting the production of documents must serve any objections in writing to the requesting party's counsel within fourteen (14) days of service of the subpoena. Fed. R. Civ. P. 45(c)(2)(B). The Subpoenas were served on September 18, 2009, therefore the time specified for Ms. Pribble's compliance to the Subpoenas was on or about October 9, 2009. It is has been over three months since Ms. Pribble's compliance deadline, and Shields has not received any objections nor documents pursuant to the Subpoenas from Ms. Pribble. Ms. Pribble has therefore waived any objections to the Subpoenas. *See Madeline L.L.C.*, 2009 WL 1563526, at * 1 (finding that a party failed to respond to a subpoena within fourteen days, therefore any objection to the subpoena was waived).

**C. Ms. Pribble Has A Continuing Duty To Comply With the Subpoenas.**

Without a showing of inconvenience, harassment, or misuse of the Federal Rules, a subpoena imposes a continuing duty on the non-party to appear until her deposition is completed. *Shulton, Inc. v. Optel Corp.*, 126 F.R.D. 80, 82 (S.D. Fla. 1989). Ms. Pribble has a continuing duty to appear for her deposition and to respond to the document subpoena related to the Illinois Action. If she cannot provide an adequate excuse for non-compliance, the court may hold her in

contempt. *See* Rule 45(e) ("[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court from which the subpoena issued.)

### D. Shields' Good Faith Efforts to Secure Compliance with the Subpoenas Pursuant to Local Rule 3.01(g).

Pursuant to Local Rule 3.01(g) of the Middle District of Florida, Shields' counsel has made good faith attempts to resolve the whereabouts of Ms. Pribble with Broaddus' counsel, but was forced to undertake an independent investigation to determine Ms. Pribble's whereabouts. Shields' counsel has also conferred with Broaddus' counsel about this motion. Broaddus' counsel has no objection to the motion.

## IV. Conclusion

Given Ms. Pribble's failure to comply with the deposition subpoena and the document subpoena, and the relevance of her testimony, Shields requests that the Court enter an order:

1. Holding Ms. Pribble in contempt;

2. Compelling Ms. Pribble to respond to (a) the deposition subpoena, by appearing for her deposition on Tuesday, February 9, 2010, at the offices of First Choice Reporting, 305 North Sinclair Avenue, Tavares, Florida 32778 and (b) the document subpoena, by producing all documents identified in the September 18, 2009 Subpoena, within fourteen (14) days of the granting of this Motion; and

3. Awarding any other relief deemed just.

Respectfully submitted,

Michael J. Furbush
Florida Bar No. 070009

Michael J. Furbush (mfurbush@ralaw.com)
ROETZEL & ANDRESS
420 South Orange Avenue
CNL Center II, Seventh Floor
Orlando, Florida 32801
Telephone: (407) 835-8557
Facsimile: (407) 835-3596

Thomas I. Matyas (1796984) (matyas@wildman.com)
Alison C. Conlon (6272083) (conlon@wildman.com)
Megan M. Keleher (6293103) (keleher@wildman.com)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229
Telephone: (312) 201-2000
Facsimile: (312) 201-2555
*Motion for Pro Hac Vice Admission Pending*

**Attorneys for Defendant/Counter-Plaintiff Kevin Shields**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 20, 2010, a true and correct copy of the foregoing was sent via U.S. Mail to: Lawrence A. Stein, Huck Bouma PC, 1755 South Naperville Road, Wheaton, Illinois 60187-8132; and Eric C. Boughman, Pohl & Short, P.A., 280 West Canton Avenue, Suite 410, Winter Park, Florida 32789. A true and correct copy was sent via hand delivery to: LuAnn Pribble, 10125 North Em-En-El Grove Road, Leesburg, Florida 34788.

Michael J. Furbush

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

FILED-4
08 MAY 30 PM 3:34
CLERK-CIRCUIT COURT
LAW DIVISION

| | | |
|---|---|---|
| BRET A. BROADDUS, | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN SHIELDS | ) | |
| | ) | |
| Defendant. | ) | |

2008L005933
CALENDAR/ROOM E
TIME 00:00
Other Com Litigation

COMPLAINT

NOW COMES Plaintiff, Bret A. Broaddus ("Broaddus"), by his attorneys, Weissberg and Associates, and complains against Defendant, Kevin Shields, and in support of his Complaint, states:

1. On or about April 13, 1999, Will Partners, LLC ("Will Partners") was incorporated in Illinois by Defendant Kevin Shields ("Shields") and Don Pescara, among others.

2. On information and belief, Will Partners was an entity which purchased real property for leasing and development.

3. On or about November 2, 2000, Broaddus was assigned a 10% membership interest in Will Partners, and Will Partners further agreed to provide Broaddus with compensation for services Broaddus provided to Will Partners in an amount equal to 44.444% of 90% of "the Net Cash Flow, Net Proceeds, or in kind distributions received by Shields and Pescara" in connection to their proportionate membership interests. See November 2, 2000 Agreement attached hereto and marked as Exhibit A. The November 2, 2000 Agreement acknowledges that Broaddus was to receive a 50% share of the distributions of Will Partners.

4. The services Broaddus provided to Will Partners was in connection to the acquisition and construction of several build-to-suit buildings purchased by Will Partners. Broaddus negotiated the acquisition and/or construction of these build-to-suit properties and procured commercial tenants for the properties on behalf of Will Partners.

5. On or about November 1, 2001, Broaddus was involved in a motor vehicle accident in which he suffered massive bodily injury and a traumatic brain injury. Thereafter, Broaddus lost significant mental faculty and has since struggled with regaining his cognitive abilities.

6. Subsequent to Broaddus' motor vehicle accident of November 2001, Shields made certain misrepresentations about partnership assets and liabilities to Broaddus; namely, that rents were not being received for several of the build-to-suit properties and otherwise underrepresented accounts receivable to Broaddus.

7. By making such statements in connection to the accounts receivable of Will Partners, Shields persuaded Broaddus to assign Broaddus' shares in Will Partners to Shields. On or about June 1, 2003, Broaddus assigned all right, title, and interest in Will Partners to Shields in exchange for compensation far below the actual value of compensation (3 cents for every dollar owed) due and owing to Broaddus pursuant to the November 2, 2000 Agreement. See June 1, 2003 Assignments, attached hereto and marked as Exhibits B and C respectively.

**COUNT I**

**(Breach of Fiduciary Duty)**

8. Plaintiff restates and realleges paragraphs 1 through 7 as though fully restated as paragraph 8 of this Count I.

9. A special relationship existed between Shields and Broaddus because they were fellow members of Will Partners.

10. Shields, who maintained, controlled and managed the assets and liabilities of Will Partners owed Broaddus a fiduciary duty in the management of Will Partners and owed Broaddus a duty to accurately and truthfully account to the members about the business and financial affairs of Will Partners.

11. Shields breached his duty to Broaddus by making exerting undue influence on Broaddus and taking advantage of Broaddus while he was in a weakened condition and by making misrepresentations to Broaddus with respect to the assets and liabilities of Will Partners in order to induce Broaddus to sell, at a highly reduced rate, Broaddus' interest in Will Partners.

12. As a result of Shields' misrepresentations made to Broaddus, Broaddus was convinced by Shields to sell his interests in Will Partners for an amount worth far less than the actual amount due to Broaddus for his efforts expended on behalf of Will Partners.

13. As a direct and proximate result of Shields' breaches of fiduciary duties, Plaintiff has suffered damages in the amount to be proven at trial, but in excess of $75,000.00, including all compensatory damages and costs.

WHEREFORE, Plaintiff Bret Broaddus respectfully requests this Court enter judgment in his favor and against Kevin Shields; award Plaintiff compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount in excess of $75,000.00; and award any further relief to which this Court finds Broaddus entitled.

BRET A. BROADDUS, Plaintiff

By: ______________________
One of his attorneys

Ariel Weissberg, Esq.
Rakesh Khanna, Esq.
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60604
(312) 663-0004
Attorney No. 91781

# AGREEMENT

This Agreement is made as of the 2nd day of November, 2000 between Kevin A. Shields ("Shields"), Don Pescara ("Pescara") and Bret Broaddus ("Broaddus").

## RECITALS

A. Reference is made to the First Amended and Restated Operating Agreement of WIL PARTNERS, LLC, a Delaware limited liability company (the "Company"), dated as of April 26, 2000 (the "Operating Agreement"), between Shields, Pescara, World Kitchen, Inc., a Delaware corporation ("WKI"), and Will Acquisitions, Inc., a Delaware corporation ("Managing Member"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Operating Agreement.

B. Shields currently owns a 74% Membership Interest in the Company. Simultaneously with the execution and delivery of this Agreement, Shields is assigning to Broaddus a 7.50% Percentage Interest in the Company. Subsequent to such assignment Shields will own a 66.5% Percentage Interest ("Shields Interest"). Pescara currently owns a 25% Percentage Interest in the Company. Simultaneously with the execution and delivery of the letter, Pescara is assigning to Broaddus a 2.5% Percentage Interest in the Company. Subsequent to such assignment Pescara will own a 22.50% Membership Interest (the "Pescara Interest"). Subsequent to the assignments by Shields and Pescara, Broaddus will own a ten percent (10%) Membership Interest in the Company.

C. Shields and Pescara have agreed to compensate Broaddus for certain future services by paying to Broaddus 44.444% of ninety percent (90%) of the Net Cash Flow, Net Proceeds, or in kind distributions, if any, actually received by Shields and Pescara from the Shields Interest and the Pescara Interest, respectively ("Distributions"). Such 44.444% payment of the Distributions is hereinafter referred to as the "Additional Payments".

D. Broaddus hereby acknowledges that by virtue of the foregoing assignments from Shields and Pescara, and the Additional Payments, he is effectively receiving 50.00% of 100% of the Distributions to all Members of the Company.

NOW THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties agree as follows:

1. The Recitals to this Agreement are hereby incorporated by reference as though fully set forth herein.

2. Notwithstanding anything contained in the Operating Agreement to the contrary:

(i) within five (5) business days after receipt thereof, after receipt of any Distributions, Shields and Pescara shall pay to Broaddus an amount equal to 44.444% of the Distributions received by them pursuant to the Shields Interest and the Pescara Interest, respectively;

EXHIBIT A

(ii) Broaddus agrees that for tax purposes, he shall receive all General Tax Allocations, Special Tax Allocations and all other tax effects arising from the payments referred to in clause (i) above as if Broaddus owned a 50% Membership Interest in the Company, notwithstanding that Broaddus is entitled only to an interest in the Distributions actually received by Shields and Pescara;

(iii) if the parties are unable to effect such tax treatment through direct payments to Broaddus, the parties shall form an entity into which such Distributions shall be placed to effectively allocate the tax effects of such payments to accomplish the objective set forth in clause (ii) above, without requiring Shields or Pescara to pay tax on, or suffer negative tax consequences as a result of, the Additional Payments;

(iv) Shields shall be the Tax Matters Member or Partner of such entity for purposes of effecting the stated objectives set forth in clause (iii) above and the costs of such entity formation and operation (e.g., attorneys' and accountants' fees, formation, maintenance, franchise fees and the like) shall be divided between the parties on the basis of the Distributions retained by them, after giving effect to this Agreement and the Additional Payments;

(v) if any party fails to comply with the provisions of clause (iii) and (iv) above, such non-complying party, at its sole cost and expense, shall indemnify, defend and hold harmless the other parties hereto with respect to any adverse tax treatment, consequences or effects arising from such failure. Costs and expense incurred by the complying parties hereto may be offset from Distributions payable to the non-complying party.

3. Broaddus acknowledges and agrees that (a) the Shields Assignment and the Pescara Assignment are contingent upon the consent of WKI and Wells Fargo Bank National Association ("Wells"), holder of the current Loan on the Property; (b) if the consent of the foregoing parties is not received, this Agreement and the assignments described in clause (a) above shall be void, *ab initio*, and of no force and effect provided, however, that Shields and Pescara shall act diligently in obtaining the consents of WKI and Wells; and (c) costs or expenses in obtaining such consents including, without limitation, attorneys' fees of the Company and Wells, shall be deemed an expense of the Company.

4. Broaddus further acknowledges and agrees that the liability for any one or more of the Additional Payments is not a joint and several obligation of Shields or Pescara; and that this Agreement is not a guarantee that any specific amount or return will be distributed to Shields or Pescara and paid to Broaddus as Additional Payments.

5. In the event of either (a) a financing of the Property (b) a sale of the Property; or (c) the leasing of the Property, Shields, as managing member of the Manager of the Company, shall cause the Manager to deliver sixty (60) days prior notice to Broaddus.

6. Notwithstanding anything contained in the Operating Agreement to the contrary, in the event of an exercise of the Buy/Sell right pursuant to the terms of Section 11 of the Operating Agreement by the parties hereto, the Buy Sell Price of the respective interests of the Members shall be adjusted as hereinafter set forth:

(a) If Broaddus elects to purchase the Shields Interest or the Pescara Interest, the Buy Sell Price for the interest in question shall be adjusted by multiplying the same by 55.556%.

(b) If Shields or Pescara elect to purchase the Broaddus Membership Interest, the Buy Sell Price shall be adjusted by multiplying the same by 500%.

(c) the parties acknowledge that the aforesaid percentages (i) have been calculated based on the percentage of each parties membership interests as of the date hereof, and that such percentages shall be equitably adjusted in the event the percentage amount of their respective interests changes; and (ii) the interests of the Managing Member and Kevin Shields have been treated as one interest for the purpose of this paragraph.

7. Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceeding. This Agreement constitutes the entire agreement between the parties hereto pertaining to Broaddus' interest in the Company and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written, are hereby superseded with respect to the subject matter hereof. No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is or may be sought.

8. If it is necessary to interpret or enforce any of the terms of this Agreement, it is the intent of all parties that the laws of the State of Delaware shall apply, without giving effect to principles or provisions thereof related to conflicts of laws or choice of laws.

9. No waiver by either party of a breach of any of the terms, covenants or conditions of this Agreement by the other party shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default by either party hereunder shall be implied from any omission by the other party to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect a default other than as specified in such waiver. The consent or approval by either party to any act by the other party requiring consent or approval, shall not be deemed to waive or render unnecessary consent or approval to or of any subsequent similar acts.

10. This agreement shall inure to the benefit of and be binding upon, the successors and assigns of each party hereto.

11. All notices, demands, requests, consents, approvals and other communications hereunder shall be in writing and personally delivered or couriered (by Federal Express or another reputable, national overnight delivery service), addressed to the respective parties, as follows: if to Broaddus: 112 Clubhouse Drive, Barrington, IL 60010; with a copy to: Alan S. Levin, Esq., Alan S. Levin & Associates, Ltd., 134 North LaSalle Street, Suite 720, Chicago, Illinois 60602; if to Shields, c/o Griffin Capital, 3421 Manhattan Avenue, Manhattan Beach, California, 90266; or if to Pescara, c/o Griffin Capital, 1214 N. LaSalle St., Chicago, IL 60610,

and in the case of notices to Shields or Pescara with a copy to: Mary Higgins, Esq., Wildman, Harrold, Allen & Dixon, 225 W. Wacker Drive, Chicago, IL 60606-1229, or to such other address as either may hereafter designate, and shall be effective upon receipt as evidenced by a receipt signed by a person at such address authorized to accept delivery, or upon refusal to accept delivery.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

Dated: As of November 2, 2000.

Kevin A. Shields

Don G. Pescara

Bret A. Broaddus

# ASSIGNMENT

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A. Assignor is the holder of that certain agreement executed by and between Kevin A. Shields ("Shields"), Don G. Pescara ("Pescara") and Bret A. Broaddus ("Broaddus") and dated November 2nd, 2000 wherein Shields and Pescara assigned to Broaddus a portion of their membership interests in Will Partners, LLC, a Delaware limited liability company (the "Company") such that, following the assignment, Broaddus, among other things, is entitled to effectively receive 50.0% of 100.0% of the distributions to all members of the Company (the "Membership Participation").

B. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Participation to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Participation for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Agreement, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.** The purchase price for the Membership Participation is $500,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Participation, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A. Assignor represents and warrants that (a) he is the sole owner of the Membership Participation; (b) the Membership Participation is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Participation; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to

EXHIBIT B

which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B. Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Participation; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (c) Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C. These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.** Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

**Headings.** The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed on the date first above written.

Bret A. Broaddus

**ASSIGNMENT**

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A. Assignor is the holder of a 10.00% membership interest (the "Membership Interest") in Will Partners, LLC, a Delaware limited liability company (the "Company").

B. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Interest to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Interest for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Membership Interest, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.** The purchase price for the Membership Interest is $100,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Interest, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A. Assignor represents and warrants that (a) he is the sole owner of the Membership Interest; (b) the Membership Interest is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Interest; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other

EXHIBIT
C

information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B. Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Interest; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (c) Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C. These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.** Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals,

agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

**Headings.** The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed on the date first above written.

____________________________
Bret A. Broaddus

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRET A. BROADDUS,** | ) | |
| | ) | **Case No. 08-CV-4420** |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | **Judge St. Eve** |
| **v.** | ) | **Magistrate Judge Cole** |
| | ) | |
| **KEVIN SHIELDS,** | ) | **Jury Demanded** |
| | ) | **Hearing Date: 12/2/08** |
| **Defendant/Counter-Plaintiff.** | ) | **Hearing Time: 8:30 am** |

**BROADDUS' INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)**

NOW COMES Plaintiff and Counter-Defendant, Bret A. Broaddus ("Broaddus"), by his attorneys, Ariel Weissberg, Rakesh Khanna, Noelle Ansley, and the law firm of Weissberg and Associates, Ltd., Weissberg and Associates, and makes the following disclosures pursuant to FRCP 26(a)(1):

I. **WITNESSES:**

A. Plaintiff Bret Broaddus. Broaddus has knowledge of the allegations in his Complaint, his membership in Will Partners and related business ventures, and the circumstances surrounding his execution of the Assignment Agreements with Kevin Shields to effectuate the sale of Broaddus' interests in Will Partners to Shields.

B. Dave Cochrane of Hansen, Cochrane & Reed, Ltd., 60 Revere Drive, Suite 202, Northbrook, Illinois, 60062. Cochrane was at all times relevant Broaddus' accountant, and has knowledge of the tax consequences and financial liabilities incurred by Broaddus with respect to the sale of Broaddus' interests in Will Partners; Broaddus' physical and mental state prior to, during, and subsequent to the sale of the interests in Will Partners; the Assignment

Agreements executed by Broaddus and Shields; and the effective dates of the sale of Broaddus' interests in Will Partners as alleged in the Complaint.

C. Luanne Pribble, current address unknown. Luanne is the estranged girlfriend of Broaddus and has knowledge of Broaddus' involvement with Will Partners and related business ventures, the sale of Broaddus' interests to Shields, and Broaddus' physical and mental state prior to, during, and subsequent to the sale of the interests in Will Partners.

D. Defendant Kevin Shields. Kevin Shields has knowledge of the sale of interest in Will Partners, LLC to Broaddus and of the sale of Broaddus' interest in Will Partners, LLC to Shields as alleged in the Complaint and Counterclaim; Will Partners' business ventures; and the financial status of Will Partners prior to and subsequent to Broaddus' sale of his interest in Will Partners to Shields.

II. **DOCUMENTS:**

The following are documents that Plaintiff has in his possession, dominion or control that are relevant to the matters in this litigation:

A. November 2, 2000 Agreement assigning interest in Will Partners, LLC to Bret Broaddus.

B. Will Partners, LLC Member Distribution Reconciliation, Balance Sheet Reconciliation, Balance Sheet, and Income Statement dated September 3, 2002.

C. Will Partners, LLC Loan Information sheet (4/27/00 Wells Fargo loan).

D. Will Partners, LLC Property and Lease Information for World Kitchen, Inc. facility in Monee, Illinois.

E. Assignment Agreements between Bret Broaddus and Kevin Shields dated June 1, 2003.

Plaintiff reserve the right to supplement the documents.

III. **DAMAGES**

Broaddus estimates his damages as follows: At the time of the sale of his interest in Will Partners, LLC, Broaddus' interests were worth approximately $1,200,000.00, which were sold for approximately half the actual value. Broaddus estimates that had he not sold his interests in Will Partners, his interests would have a current value of between $5,000,000.00 and $6,000,000.00.

IV. **INSURANCE AGREEMENTS**:

There are no insurance agreements or policies of any relevance.

**BRET A. BROADDUS,** Plaintiff and Counter-Defendant

By: /s/ Noelle Ansley
One of his attorneys

Ariel Weissberg, Esq. (Attorney No. 03125591)
Rakesh Khanna, Esq. (Attorney No. 06243244)
Noelle R. Ansley, Esq. (Attorney No. 06271872)
Weissberg and Associates, Ltd.
401 So. LaSalle--Suite 403
Chicago, IL 60605

# AGREEMENT

This Agreement is made as of the 2ND day of November, 2000 between Kevin A. Shields ("Shields"), Don Pescara ("Pescara") and Bret Broaddus ("Broaddus").

## RECITALS

A. Reference is made to the First Amended and Restated Operating Agreement of WILL PARTNERS, LLC, a Delaware limited liability company (the "Company"), dated as of April 26, 2000 (the "Operating Agreement"), between Shields, Pescara, World Kitchen, Inc., a Delaware corporation ("WKI"), and Will Acquisitions, Inc., a Delaware corporation ("Managing Member"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Operating Agreement.

B. Shields currently owns a 74% Membership Interest in the Company. Simultaneously with the execution and delivery of this Agreement, Shields is assigning to Broaddus a 7.50% Percentage Interest in the Company. Subsequent to such assignment Shields will own a 66.5% Percentage Interest ("Shields Interest"). Pescara currently owns a 25% Percentage Interest in the Company. Simultaneously with the execution and delivery of the letter, Pescara is assigning to Broaddus a 2.5% Percentage Interest in the Company. Subsequent to such assignment Pescara will own a 22.50% Membership Interest (the "Pescara Interest"). Subsequent to the assignments by Shields and Pescara, Broaddus will own a ten percent (10%) Membership Interest in the Company.

C. Shields and Pescara have agreed to compensate Broaddus for certain future services by paying to Broaddus 44.444% of ninety percent (90%) of the Net Cash Flow, Net Proceeds, or in kind distributions, if any, actually received by Shields and Pescara from the Shields Interest and the Pescara Interest, respectively ("Distributions"). Such 44.444% payment of the Distributions is hereinafter referred to as the "Additional Payments".

D. Broaddus hereby acknowledges that by virtue of the foregoing assignments from Shields and Pescara, and the Additional Payments, he is effectively receiving 50.00% of 100% of the Distributions to all Members of the Company.

NOW THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties agree as follows:

1. The Recitals to this Agreement are hereby incorporated by reference as though fully set forth herein.

2. Notwithstanding anything contained in the Operating Agreement to the contrary:

(i) within five (5) business days after receipt thereof, after receipt of any Distributions, Shields and Pescara shall pay to Broaddus an amount equal to 44.444% of the Distributions received by them pursuant to the Shields Interest and the Pescara Interest, respectively;

EXHIBIT A

Doc No · 324542v7

(ii) Broaddus agrees that for tax purposes, he shall receive all General Tax Allocations, Special Tax Allocations and all other tax effects arising from the payments referred to in clause (i) above as if Broaddus owned a 50% Membership Interest in the Company, notwithstanding that Broaddus is entitled only to an interest in the Distributions actually received by Shields and Pescara;

(iii) if the parties are unable to effect such tax treatment through direct payments to Broaddus, the parties shall form an entity into which such Distributions shall be placed to effectively allocate the tax effects of such payments to accomplish the objective set forth in clause (ii) above, without requiring Shields or Pescara to pay tax on, or suffer negative tax consequences as a result of, the Additional Payments;

(iv) Shields shall be the Tax Matters Member or Partner of such entity for purposes of effecting the stated objectives set forth in clause (iii) above and the costs of such entity formation and operation (e.g., attorneys' and accountants' fees, formation, maintenance, franchise fees and the like) shall be divided between the parties on the basis of the Distributions retained by them, after giving effect to this Agreement and the Additional Payments;

(v) if any party fails to comply with the provisions of clause (iii) and (iv) above, such non-complying party, at its sole cost and expense, shall indemnify, defend and hold harmless the other parties hereto with respect to any adverse tax treatment, consequences or effects arising from such failure. Costs and expense incurred by the complying parties hereto may be offset from Distributions payable to the non-complying party.

3. Broaddus acknowledges and agrees that (a) the Shields Assignment and the Pescara Assignment are contingent upon the consent of WKI and Wells Fargo Bank National Association ("Wells"), holder of the current Loan on the Property; (b) if the consent of the foregoing parties is not received, this Agreement and the assignments described in clause (a) above shall be void, *ab initio*, and of no force and effect provided, however, that Shields and Pescara shall act diligently in obtaining the consents of WKI and Wells; and (c) costs or expenses in obtaining such consents including, without limitation, attorneys' fees of the Company and Wells, shall be deemed an expense of the Company.

4. Broaddus further acknowledges and agrees that the liability for any one or more of the Additional Payments is not a joint and several obligation of Shields or Pescara; and that this Agreement is not a guarantee that any specific amount or return will be distributed to Shields or Pescara and paid to Broaddus as Additional Payments.

5. In the event of either (a) a financing of the Property (b) a sale of the Property; or (c) the leasing of the Property, Shields, as managing member of the Manager of the Company, shall cause the Manager to deliver sixty (60) days prior notice to Broaddus.

6. Notwithstanding anything contained in the Operating Agreement to the contrary, in the event of an exercise of the Buy/Sell right pursuant to the terms of Section 11 of the Operating Agreement by the parties hereto, the Buy Sell Price of the respective interests of the Members shall be adjusted as hereinafter set forth:

(a) If Broaddus elects to purchase the Shields Interest or the Pescara Interest, the Buy Sell Price for the interest in question shall be adjusted by multiplying the same by 55.556%.

(b) If Shields or Pescara elect to purchase the Broaddus Membership Interest, the Buy Sell Price shall be adjusted by multiplying the same by 500%.

(c) the parties acknowledge that the aforesaid percentages (i) have been calculated based on the percentage of each parties membership interests as of the date hereof, and that such percentages shall be equitably adjusted in the event the percentage amount of their respective interests changes; and (ii) the interests of the Managing Member and Kevin Shields have been treated as one interest for the purpose of this paragraph.

7. Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorneys' fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceeding. This Agreement constitutes the entire agreement between the parties hereto pertaining to Broaddus' interest in the Company and all prior and contemporaneous agreements, representations, negotiations and understandings of the parties hereto, oral or written, are hereby superseded with respect to the subject matter hereof. No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is or may be sought.

8. If it is necessary to interpret or enforce any of the terms of this Agreement, it is the intent of all parties that the laws of the State of Delaware shall apply, without giving effect to principles or provisions thereof related to conflicts of laws or choice of laws.

9. No waiver by either party of a breach of any of the terms, covenants or conditions of this Agreement by the other party shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default by either party hereunder shall be implied from any omission by the other party to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect a default other than as specified in such waiver. The consent or approval by either party to any act by the other party requiring consent or approval, shall not be deemed to waive or render unnecessary consent or approval to or of any subsequent similar acts.

10. This agreement shall inure to the benefit of and be binding upon, the successors and assigns of each party hereto.

11. All notices, demands, requests, consents, approvals and other communications hereunder shall be in writing and personally delivered or couriered (by Federal Express or another reputable, national overnight delivery service), addressed to the respective parties, as follows: if to Broaddus: 112 Clubhouse Drive, Barrington, IL 60010; with a copy to: Alan S. Levin, Esq., Alan S. Levin & Associates, Ltd., 134 North LaSalle Street, Suite 720, Chicago, Illinois 60602; if to Shields, c/o Griffin Capital, 3421 Manhattan Avenue, Manhattan Beach, California, 90266; or if to Pescara, c/o Griffin Capital, 1214 N. LaSalle St., Chicago, IL 60610,

and in the case of notices to Shields or Pescara with a copy to: Mary Higgins, Esq., Wildman, Harrold, Allen & Dixon, 225 W. Wacker Drive, Chicago, IL 60606-1229, or to such other address as either may hereafter designate, and shall be effective upon receipt as evidenced by a receipt signed by a person at such address authorized to accept delivery, or upon refusal to accept delivery.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

Dated: As of November 2, 2000.

Kevin A. Shields

Don G. Pescara

Bret A. Broaddus

Doc. No. 534342v7

# ASSIGNMENT

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A. Assignor is the holder of that certain agreement executed by and between Kevin A. Shields ("Shields"), Don G. Pescara ("Pescara") and Bret A. Broaddus ("Broaddus") and dated November 2nd, 2000 wherein Shields and Pescara assigned to Broaddus a portion of their membership interests in Will Partners, LLC, a Delaware limited liability company (the "Company") such that, following the assignment, Broaddus, among other things, is entitled to effectively receive 50.0% of 100.0% of the distributions to all members of the Company (the "Membership Participation").

B. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Participation to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Participation for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Agreement, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.** The purchase price for the Membership Participation is $500,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Participation, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A. Assignor represents and warrants that (a) he is the sole owner of the Membership Participation; (b) the Membership Participation is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Participation; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to

EXHIBIT B

which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B. Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Participation; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Participation or the violation of which is likely to have a material and adverse effect upon the Membership Participation; (c) Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Participation and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Participation; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Participation; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C. These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.** Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

**Headings.** The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed on the date first above written.

Bret A. Broaddus

# ASSIGNMENT

**THIS ASSIGNMENT** is executed as of the 1st day of June, 2003 by Bret A. Broaddus, an Illinois resident ("Assignor") in favor of Kevin A. Shields ("Assignee").

**THIS ASSIGNMENT** is made with reference to the following facts:

A. Assignor is the holder of a 10.00% membership interest (the "Membership Interest") in Will Partners, LLC, a Delaware limited liability company (the "Company").

B. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Assignor, Assignor desires to execute and deliver this Assignment for the purpose of assigning the Membership Interest to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing and intending to be legally bound hereby, Assignor agrees as follows:

**TO HAVE AND TO HOLD,** Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all rights, interests, and titles of Assignor in and to the Membership Interest for Assignee's use and benefit forever, with full power and authority vested in Assignee with respect to the Membership Interest, to demand, receive and to sue for, either in the name of Assignee or in the name of Assignor, and enforce the rights transferred hereunder, hereby ratifying and confirming all that Assignee may do by virtue hereof.

**Purchase Price; Receipt of Payment.** The purchase price for the Membership Interest is $100,000.00 (the "Purchase Price"). Assignor acknowledges that Assignor has received full payment by Assignee of the Purchase Price and that such payment constitutes the full consideration for the transfer of the Membership Interest, which transfer is fully consummated by the execution and delivery of this Assignment.

**Representations and Warranties.**

A. Assignor represents and warrants that (a) he is the sole owner of the Membership Interest; (b) the Membership Interest is held by Assignor free and clear of all liens, charges, claims and encumbrances; (c) Assignor possesses the power and authority in his own right to sell the Membership Interest; (d) the execution, delivery and performance of this Assignment by Assignor and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignor is a party or by which Assignor or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (e) Assignor has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other

EXHIBIT
C

information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (f) Assignor has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (g) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (h) Assignor has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

B. Assignee represents and warrants that (a) Assignee possesses the power and authority in his own right to purchase the Membership Interest; (b) the execution, delivery and performance of this Assignment by Assignee and the consummation by him of the transactions contemplated hereby, will not violate any provision of any law, ordinance or regulation or any order, judgment or decree of any court or any governmental authority, or conflict with, result in a breach of or constitute a default under any indenture, mortgage, lease, agreement, contract or instrument to which Assignee is a party or by which Assignee or any of his properties or assets may be bound, or result in or require the creation of any mortgage, lien or security interest with respect to the Membership Interest or the violation of which is likely to have a material and adverse effect upon the Membership Interest; (c) Assignee has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale of the Membership Interest and has had full access to such other information concerning the Company as he has requested, including an opportunity to examine the books and records of the Company and to discuss the condition of the Company; (d) Assignee has waived all rights of appraisal of the value of the Company and any other method of determining the value of the Membership Interest; (e) the Purchase Price constitutes fair and sufficient consideration for the sale of the Membership Interest; and (f) Assignee has been advised to seek the advice of independent counsel with respect to the transactions contemplated by this Assignment.

C. These representations and warranties shall survive the date of this Assignment.

**No Rights in Third Parties.** Nothing expressed or implied in this Assignment is intended to confer upon any person, other than Assignor and Assignee, and their respective successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Assignment.

**Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and legal representatives.

**Release.**

A. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignor hereby remises, releases and forever discharges Assignee, its past, present and future members, managers, officers, directors, employees, principals,

agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent (including, without limitation, those relating to Assignor's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein), from the beginning of time to the date of this Assignment.

B. On behalf of itself, its past, present and future partners, officers, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, wholly owned affiliates and/or other related entities, successors, assigns, estate, executor, or any one or more of them, Assignee hereby remises, releases and forever discharges Assignor, its past, present and future members, managers, officers, directors, employees, principals, agents, attorneys, predecessors, successors, subsidiaries, affiliates and/or other related entities, assigns, or any one or more of them, from any and all manner of actions, causes, and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, demands and liabilities, whatsoever, in law or equity, known or unknown, fixed or contingent including, without limitation, those relating to Assignee's relationship in any employment capacity with respect to the Company or with any related or affiliated entity or individual member of the Company, to the extent of the interest transferred herein, arising from the beginning of time to the date of this Assignment.

**Indemnification.** Assignor agrees to indemnify, defend and hold harmless the Assignee and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignor contained herein. Assignee agrees to indemnify, defend and hold harmless the Assignor and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of Assignee contained herein. These indemnifications shall survive the date of this Assignment.

**Governing Law.** This Assignment shall be governed by, construed and enforced according to the laws of Delaware.

Headings. The section headings contained herein are for convenience only and are not intended to define or limit the contents of such sections.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed on the date first above written.

______________________________

Bret A. Broaddus

# WILL PARTNERS, LLC

## PROPERTY AND LEASE INFORMATION

| | |
|---|---|
| Owner/Lessor | Will Partners, LLC. |
| Lessee | World Kitchen, Inc. |
| Property | An industrial warehouse and distribution facility located at 5800 Industrial Drive, Monee, Illinois. |
| Property Square Feet | 700,200 square feet of net rentable area inclusive of 10,000 square feet of ancillary office space. |
| Percent Occupied by Lessee | 100%. |
| Lease Type | Bond Type, Triple-Net Lease. |
| Lease Commencement | March 1, 2000, for a period of 15 years. |
| Lease Expiration | February 28, 2015. |
| Renewal Options | Two successive renewal terms of five years each at the then fair market rent. |

| Net Rental Rates | Monthly | Annual |
|---|---|---|
| March 1, 2002 – February 28, 2005 | 168,168.34 | 2,018,020.00 |
| March 1, 2005 – February 28, 2010 | 189,876.92 | 2,278,523.00 |
| March 1, 2010 – February 28, 2015 | 213,049.42 | 2,556,593.00 |

What all do you want me to include from these pages? Just the rent info??

# ILL PARTNERS, LLC

## LOAN INFORMATION

| | |
|---|---|
| Lender | Wells Fargo Bank, N.A. |
| Original Principal Amount | $18,240,000. |
| Current Principal Balance | $18,071,594.41, as of December 31, 2002. |
| Issuance Date | April 27, 2000. |
| Maturity Date | June 1, 2010. |
| Recourse | Loan is non-recourse with the exception of standard Lender carve-outs for malfeasance. |
| Interest Rate | 8.64%, 30/360 basis. |
| Amortization Period | 30-years. |
| Debt Constant | 9.35%. |
| Monthly Debt Service | $142,063.55. |
| Annual Debt Service Payment | $1,704,762.60. |
| Assumption | One time right subject to payment of an assumption fee equal to 1.0% of the then outstanding principal balance of the loan. |
| Prepayment | Prohibited until after the April 27, 2003 and then subject to providing Lender with defeasance collateral consisting of United States Treasury Securities in an amount sufficient to provide Lender with monthly income equal to or greater than the Monthly Debt Service. |

# *Will Partners, LLC*

## Member Distribution Reconciliation

September 3, 2002

| | | |
|---|---|---|
| ***Beginning Cash Balance*** | | $ 269.47 |
| Net Income | | 38,161.55 |
| *PLUS: Decreases in Balance Sheet Asset Accounts* | | |
| (No Revenue Recognition) | | - |
| Total Cash Available for Distribution | | 38,431.02 |
| *LESS: Changes in Balance Sheet Liability/Owner Accounts* | | |
| (No Expense Recognition) | | |
| Loan Reserve Deposit (inclusive of interest) | | 6,010.24 |
| Lease Amortization Expenses | | - |
| Loan Amortization Expenses | | - |
| Mortgage Principal | | 8,241.54 |
| Member Distributions | | |
| Bret A. Broaddus | 50.00% | 11,900.00 |
| Kevin A. Shields | 37.50% | 8,925.00 |
| Don G. Pescara | 12.50% | 2,975.00 |
| Total Member Distributions | | 23,800.00 |
| Total Cash Payments | | 38,051.78 |
| ***Ending Cash Balance*** | | $ 379.24 |

# *Will Partners, LLC*

## Balance Sheet Reconciliation

| | August 5, 2002 | September 3, 2002 | Net Change |
|---|---|---|---|
| **ASSETS** | | | |
| *Current Assets* | | | |
| Checking | $ 269.48 | $ 379.25 | $ 109.77 |
| Total Current Assets | 269.48 | 379.25 | 109.77 |
| *Fixed Assets* | | | |
| Land Value | - | - | - |
| Capital Improvements | 16,212,289.96 | 16,212,289.96 | - |
| Accumulated Depreciation | (744,699.00) | (744,699.00) | - |
| Total Fixed Assets | 15,467,590.96 | 15,467,590.96 | - |
| *Other Assets* | | | |
| Lease Amortization | 1,289,902.52 | 1,289,902.52 | - |
| Loan (Perm.) Amortization | 313,719.33 | 313,719.33 | - |
| Loan (Const.) Amortization | - | - | - |
| Accumulated Amortization | (216,768.00) | (216,768.00) | - |
| Punch List Holdback | - | - | - |
| Loan Reserve | 153,930.43 | 159,940.67 | 6,010.24 |
| Total Other Assets | 1,540,784.28 | 1,546,794.52 | 6,010.24 |
| **TOTAL ASSETS** | $ 17,008,644.72 | $ 17,014,764.73 | $ 6,120.01 |
| **LIABILITIES AND EQUITY** | | | |
| *Liabilities* | | | |
| Current Liabilities | $ - | $ - | $ - |
| Mortgage Note Payable | 17,986,828.69 | 17,978,587.15 | (8,241.54) |
| Total Liabilities | 17,986,828.69 | 17,978,587.15 | (8,241.54) |
| *Equity* | | | |
| *Member Capital Accounts* | | | |
| Bret A. Broaddus | (417,664.39) | (429,564.39) | (11,900.00) |
| Kevin A. Shields | (641,145.00) | (650,070.00) | (8,925.00) |
| Don G. Pescara | (229,416.10) | (232,391.10) | (2,975.00) |
| Will Acquisitions, Inc. | (2,103.29) | (2,103.29) | - |
| Total Member Capital Accounts | (1,290,328.78) | (1,314,128.78) | (23,800.00) |
| Retained Earnings | - | - | - |
| Net Income 2002 | 312,144.81 | 350,306.36 | 38,161.55 |
| Total Equity | (978,183.97) | (963,822.42) | 14,361.55 |
| **TOTAL LIABLITIES AND EQUITY** | $ 17,008,644.72 | $ 17,014,764.73 | $ 6,120.01 |

September 3, 2002

# Will Partners, LLC
## Balance Sheet
As of September 3, 2002

| | Sep 3, '02 |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Checking/Savings | |
| Checking | 379.25 |
| Total Checking/Savings | 379.25 |
| Total Current Assets | 379.25 |
| Fixed Assets | |
| Property | |
| Accumulated Depreciation | -744,699.00 |
| Capital Improvements | 16,212,289.96 |
| Total Property | 15,467,590.96 |
| Total Fixed Assets | 15,467,590.96 |
| Other Assets | |
| Amortization Accounts | |
| Accumulated Amortization | -216,768.00 |
| Lease Amortization | 1,289,902.52 |
| Loan (Perm.) Amortization | 313,719.33 |
| Total Amortization Accounts | 1,386,853.85 |
| Replacement Reserve | 159,940.67 |
| Total Other Assets | 1,546,794.52 |
| **TOTAL ASSETS** | 17,014,764.73 |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| Long Term Liabilities | |
| Permanent Loan | 17,978,587.15 |
| Total Long Term Liabilities | 17,978,587.15 |
| Total Liabilities | 17,978,587.15 |
| Equity | |
| Member Capital Accounts | |
| Broaddus | -429,564.39 |
| Pescara | -232,391.10 |
| Shields | -650,070.00 |
| Will Acquisitions, Inc. | -2,103.29 |
| Total Member Capital Accounts | -1,314,128.78 |
| Net Income | 350,306.36 |
| Total Equity | -963,822.42 |
| **TOTAL LIABILITIES & EQUITY** | 17,014,764.73 |

# Will Partners, LLC

## Income Statement

August 6 through September 3, 2002

September 3, 2002

| | Aug 6 - Sep 3, '02 |
|---|---|
| Ordinary Income/Expense | |
| Income | |
| Interest Income | 175.24 |
| Rent | |
| Priority Return to WKI | -43,498.33 |
| Rent Income - WKI | 217,501.67 |
| Total Rent | 174,003.34 |
| Total Income | 174,178.58 |
| Expense | |
| Bank Service Charges | 20.00 |
| Interest Expense | 133,822.01 |
| Management Fees | 2,175.02 |
| Total Expense | 136,017.03 |
| Net Ordinary Income | 38,161.55 |
| Net Income | 38,161.55 |

# EXHIBIT 3

AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| Bret A. Broaddus<br>*Plaintiff*<br>v.<br>Kevin Shields<br>*Defendant* | ) | Civil Action No. 08-C-04420<br><br>(If the action is pending in another district, state where:<br>Northern District of Illinois |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES

To: LuAnn Pribble
10125 N. Em-En-El Grove Road, Leesburg, Florida 34788

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| Akerman Senterfitt, Attorneys at Law<br>420 S. Orange Ave., Suite 1200<br>Orlando, Florida 32801-4904 | 10/05/2009 10:00a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 09/17/2009

*CLERK OF COURT*

_______________________ OR Megan M. Keleher

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Kevin Shields, who issues or requests this subpoena, are:

Megan Keleher, WILDMAN, HARROLD, ALLEN & DIXON, LLP, 225 W. Wacker Drive, Suite 2800, Chicago, IL 60606

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 2)

Civil Action No. 08-C-04420

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* LuAnn Pribble
was received by me on *(date)* 9-18-2009.

☒ I personally served the subpoena on the individual at *(place)* 10125 North Em En El Grove Rd, Leesburg FL on *(date)* 9-18-2009 ; or 3:13 Am

☐ I left the subpoena at the individual's residence or usual place of abode with *(name)* ________, a person of suitable age and discretion who resides there, on *(date)* ________, and mailed a copy to the individual's last known address; or

☐ I served the subpoena on *(name of individual)* ________, who is designated by law to accept service of process on behalf of *(name of organization)* ________ on *(date)* ________ ; or

☐ I returned the subpoena unexecuted because ________ ; or

☐ Other *(specify)*:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $ 91.70.

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: 22 SEPT 2009

Steven Imhof
*Server's signature*

Steven Imhof, Process Server, License #07-5-8, 5th Judicial Florida
*Printed name and title*

30835 Deal Drive
Sorrento, Florida 32776
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| BRET A. BROADDUS,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>KEVIN SHIELDS,<br><br>Defendant/Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08-CV-04420<br><br>Judge St. Eve<br><br>Magistrate Judge Cole<br><br>Jury Demanded |

**RIDER – LUANN PRIBBLE**

**DEFINITIONS**

1. "Pribble" or "You" or "Your" shall refer to LuAnn Pribble, and, where applicable, any other person or agent acting on her or their behalf, including, but not limited to, employees, servants, attorneys, accountants, insurers, consultants, experts, investigators, representatives, agents, or other persons who have, directly or indirectly, acted or are at present acting on behalf of or are otherwise subject to the control of Pribble.

2. "Broaddus" shall refer to Bret A. Broaddus.

3. "Defendant" shall refer to Kevin A. Shields.

4. "Divorce Proceeding" shall refer to *Pribble v. Broaddus*, Case No. 08 D 1045, filed in Cook County, Illinois, Domestic Relations Division.

5. "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a) and includes, without limitation, electronically stored information; all drafts; communications; correspondence; memoranda; records; reports; books; reports and/or summaries of personal conversations

or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes, records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; checks (front and back); check vouchers, check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped filmed or graphic matter, however produced or reproduced; and any paper or writing or whatever description, including any computer database or information contained in any computer although not yet printed out. Documents in electronic form include files recoverable from any computer network, shared server, personal computer, laptop computer, PDA, Blackberry, pager, telephone, cell phone, or other device that you own or that is in your possession or control. A draft or non-identical copy of any document is a separate document within the meaning of this term.

6. "Related to" means both of the following:

(a) Containing, comprising, constituting, stating, setting forth or recording, contradicting, referring to, relating to or in any way pertaining to, in whole or in part, that subject; and

(b) Describing, discussing, reflecting, interpreting, identifying, concerning, contradicting, referring to, relating to, or in any way pertaining to, in whole or in part, that subject.

7. "Communication" means every manner or means of disclosure, transfer, or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, e-mail, personal delivery, fax or otherwise.

8. "Relevant Time Period" shall refer to January 1, 2000, through the present.

## INSTRUCTIONS

1. Any word written in the singular shall be construed as plural and any word written in the plural shall be construed as singular where necessary to facilitate complete answers.

2. All information requested is from the Relevant Time Period, unless otherwise specifically indicated.

3. Concerning any and all documents which you are asked to identify in this request to produce that you do not produce on the grounds of any type of privilege, or for any other reason, indicate and describe the documents withheld by date, author(s), addressee(s), recipient(s) or distributee(s), title, type of document (e.g., memorandum, letter, report), location, identity of all persons to whom it has already been revealed, identity of all persons or entities who possess or have custody of it, the basis upon which it is being withheld, and general subject matter.

4. You are under an affirmative and continuing duty to supplement your answers and productions if you obtain or become aware of further responsive information after serving your answers.

## REQUESTS

The following documents are specifically requested:

1. All non-privileged documents related to the Divorce Proceeding, including without limitation settlement agreements.

2. All pre-nuptial or post-nuptial agreements between You and Broaddus.

3. All estate planning documents related to Broaddus, including without limitation any wills, trusts (whether revocable or irrevocable) and powers of attorney.

4. Any and all financial disclosure statements, served or produced in the Divorce Proceeding, pursuant to Cook County Circuit Court Rule 13.3.

5. Any and all pleadings filed or served or produced in the Divorce Proceeding.

6. Any and all contracts made during the Relevant Time Period, to which (a) Broaddus was a party; (b) which Broaddus negotiated in whole or in part; and (c) any entity in which Broaddus had an interest or was a party.

7. Any and all documents related to business dealings undertaken by Broaddus or someone on his behalf during the Relevant Time Period.

8. Any and all documents related to all claims, disputes, or lawsuits involving Broaddus or someone on his behalf during the Relevant Time Period, including but not limited to: (a) dissolution of marriage or order of protection proceedings; (b) traffic violation proceedings; (c) criminal proceedings; and (d) business litigations, including ones where an entity in which Broaddus or someone on his behalf had an interest or was a party.

9. Any and all documents related to Broaddus's medical insurance, including without limitation, copies of insurance cards, claim submissions and explanation of benefits, during the Relevant Time Period.

10. Any and all documents related to Broaddus's disability insurance, including without limitation, copies of insurance cards, claim submissions and explanation of benefits, during the Relevant Time Period.

11. Broaddus's medical records from the Relevant Time Period, including documents from doctors, medical treating professionals, clinics, hospitals, rehabilitation facilities, or like professionals or facilities.

12. Any and all records from psychiatric treatment or psychological counseling that Broaddus received during the Relevant Time Period, including records from doctors, medical treating professionals, clinics, hospitals, rehabilitation facilities or like professionals or facilities.

13. Any and all documents related to real estate dealings in which Broaddus or someone on his behalf were involved during the Relevant Time Period, including without limitation, all dealings related to listing, brokering, leasing and sales.

14. Any and all documents showing the banking activities of Broaddus or someone on his behalf during the Relevant Time Period, including deposits, withdrawals, loans, repayment, foreclosures, claims, lawsuits and safe-deposit boxes.

15. Any and all buy/sell agreements for real estate or other property, whether personal or commercial, in which Broaddus or someone on his behalf were involved in during the Relevant Time Period.

16. Any and all documents related to loans made to Broaddus or someone on his behalf, including without limitation, loan applications made by Broaddus or someone on his behalf, during the Relevant Time Period.

17. Any and all documents related to Broaddus's driver's license during the Relevant Time Period, including suspension or revocation.

18. Any and all documents related to automobile insurance coverage of Broaddus or someone on his behalf during the Relevant Time Period, including all claims.

19. Any and all documents related to business entities in which Broaddus or someone on his behalf had any interest in during the Relevant Time Period. Such entities include, without limitation, limited liability companies, partnerships, limited partnerships, limited liability partnerships, joint ventures, corporations or other entities in which Broaddus or someone on his behalf participated as a member, shareholder, partner, general partner or limited partner.

20. Any and all documents related to the personal or household finances of Broaddus during the Relevant Time Period, including without limitation, all utility and telephone bills and records.

21. Any and all documents related to stocks, bonds, cars, boats, real property or other personal property owned by Broaddus or someone on his behalf during the Relevant Time Period.

22. Any and all documents showing Broaddus's credit card applications, approvals, denials and use during the Relevant Time Period.

23. Any and all documents showing the status of any interest Broaddus had in brokerage accounts, stock portfolios, 401(k)s or other investment tools or devices during the Relevant Time Period.

24. Any and all documents related to guardianship proceedings involving Broaddus.

25. Any and all documents related to Broaddus's alleged interest in Will Partners, LLC, including without limitation, Broaddus's notes, correspondence, drafts and executed copies of the agreement giving rise to the alleged interest.

26. Any and all documents related to the assignment of Broaddus's alleged interest in Will Partners, LLC, in or around 2003, including without limitation, Broaddus's notes, correspondence, material received, attorney services and invoices, accountant services and invoices, drafts and executed original and copies of the assignments.

27. Any and all documents related to compensation Broaddus received in connection with Broaddus's services to Will Partners, LLC.

28. Any and all documents related to any and all agreements, whether written or oral, between Broaddus and Defendant, including all notes and drafts.

29. Any and all communications between Broaddus and Defendant during the Relevant Time Period.

30. Any and all documents related to any requests Broaddus or someone on his behalf made to others to purchase or buy out Broaddus's interest in any business entity during the years 2003 and 2004, including without limitation, all purchase or buy out agreements for your interest in any business entity, all related documents, and any and all calculations of alleged value for buy out purposes.

# EXHIBIT 4

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

Bret A. Broaddus
*Plaintiff*
v.
Kevin Shields
*Defendant*

Civil Action No. 08-C-04420

(If the action is pending in another district, state where:
Northern District of Illinois

## SUBPOENA TO TESTIFY AT A DEPOSITION OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To: LuAnn Pribble
10125 N. Em-En-El Grove Road, Leesburg, Florida 34788

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Akerman Senterfitt, Attorneys at Law<br>420 S. Orange Ave., Suite 1200<br>Orlando, Florida 32801-4904 | Date and Time:<br>10/19/2009 10:00 |
|---|---|

The deposition will be recorded by this method: by stenographic means

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 09/17/2009

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

*Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Kevin Shields, who issues or requests this subpoena, are:
Megan Keleher, WILDMAN, HARROLD, ALLEN & DIXON LLP, 225 W. Wacker Drive, Suite 2800, Chicago, IL 60606

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 2)

Civil Action No. 08-C-04420

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* LuAnn Pribble
was received by me on *(date)* 9-18-2009.

☑ I personally served the subpoena on the individual at *(place)* 10125 NORTH EM EN EL GROVE RD, LEESBURG FL on *(date)* 9-18-2009 ; or 3:13 AM

☐ I left the subpoena at the individual's residence or usual place of abode with *(name)* ____________, a person of suitable age and discretion who resides there, on *(date)* ____________, and mailed a copy to the individual's last known address; or

☐ I served the subpoena on *(name of individual)* ____________, who is designated by law to accept service of process on behalf of *(name of organization)* ____________ on *(date)* ____________ ; or

☐ I returned the subpoena unexecuted because ____________ ; or

☐ Other *(specify)*:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $ 91.70 .

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 22 SEPT 2009

[signature]
*Server's signature*

Steven Imhof; Process Server, License #07-5-8, 5th Judicial Florida
*Printed name and title*

30835 Deal Drive
Sorrento, Florida 32776
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **BRET A. BROADDUS,** | ) | |
| | ) | |
| **Plaintiff / Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. ______________** |
| | ) | **Re: Subpoena in a Civil Case** |
| **KEVIN SHIELDS,** | ) | |
| | ) | **Related Case No. 08-C-04420** |
| **Defendant / Counter-Plaintiff.** | ) | **U.S. Northern District of Illinois** |
| | ) | **Eastern Division** |

**AFFIDAVIT OF MEGAN M. KELEHER**

I, Megan M. Keleher, being duly sworn and under oath, state as follows:

1. I am an associate at the law firm of Wildman, Harrold, Allen & Dixon LLP in Chicago, Illinois.

2. I am an attorney for Defendant/Counter-Plaintiff Kevin Shields("Shields") in the above-captioned related case no. 08-C-04420, pending in the United States District Court for the Northern District of Illinois, Eastern Division ("Illinois Action").

3. I have personal knowledge of the facts set forth in this Affidavit unless otherwise stated herein. I am competent to testify as to all matters stated. If called upon, I would testify consistent with the facts set forth in this Affidavit.

4. Non-party LuAnn Pribble ("Ms. Pribble") was served with a deposition subpoena and document subpoena (collectively, the "Subpoenas") on September 18, 2009, in the Illinois Action.

5. I spoke with Ms. Pribble over the telephone on October 1, 2009, and October 5, 2009, prior to her deposition. Ms. Pribble acknowledged receipt of the Subpoenas, and confirmed that she would attend the deposition in Orlando, Florida on

October 19, 2009. She also agreed to accept service of a supplemental notice of videotaped deposition.

6. Counsel for Shields traveled to Orlando, Florida for the October 19, 2009 deposition of Ms. Pribble. However, Ms. Pribble did not appear for the deposition, nor did she produce documents pursuant to the document subpoena.

7. I learned that the trial of her divorce proceedings in Cook County with Broaddus was scheduled for November 17, 2009.

8. After several unsuccessful attempts to reach Ms. Pribble, I finally spoke with her over the telephone on November 10, 2009. Ms. Pribble and I agreed to schedule her deposition for November 19, 2009 in Chicago, and Shields' counsel sent her a confirming notice of deposition, which Ms. Pribble agreed to accept. However, Ms. Pribble did not appear for her deposition in Chicago. I later learned that the divorce trial was subsequently postponed and Ms. Pribble did not travel to Cook County.

9. I attempted to reach Ms. Pribble by telephone several times in late November of 2009, but Ms. Pribble has not returned any of my telephone calls.

10. To date, Ms. Pribble has not appeared for her deposition and has not produced any documents, pursuant to the Subpoenas.

FURTHER AFFIANT SAYETH NOT.

Megan M. Keleher

Megan M. Keleher

SUBSCRIBED AND SWORN TO
before me this 14th day of January, 2010.

Kathleen A. Leleika

Notary Public

My commission expires: 3/16/10

"OFFICIAL SEAL"
KATHLEEN A. LELEIKA
Notary Public, State of Illinois
My Commission Expires Mar. 16, 2010